IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| HAROLD E. VANN, II, | ) |
| | ) Case No. 4:06CV00011 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| GUILDFIELD MISSIONARY BAPTIST | ) |
| CHURCH, | ) By: Jackson L. Kiser |
| | )     Senior United States District Judge |
| Defendant. | ) |

Before me now is the Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated herein, the Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

## I. STATEMENT OF THE CASE

The Plaintiff, Harold E. Vann, II (hereinafter "Vann"), accepted an offer to act as a minister for the Defendant, the Guildfield Missionary Baptist Church (hereinafter "Guildfield"). Vann contends that Guildfield's by-laws contained the terms of his employment relevant to this motion.[1] Specifically, the by-laws state,

> A pastor's term of office may be ended upon ninety (90) days of notification on the part of the pastor or of the church by mutual consent. Termination of the office shall be voted on at a called business meeting. A vote of the majority of

---

[1] Vann alleges that the by-laws themselves either comprised his employment contract with Guildfield or governed an oral contract for employment between the parties.

1

the members present, providing there be present a quorum, shall make a valid termination of said office.[2]

Despite this provision, Vann claims that Deacon Chairman Willie E. Bennet (hereinafter "Bennet") sought to unilaterally terminate Vann's employment on March 15, 2004, without providing notice or obtaining a majority vote at a called business meeting. Since that time, Guildfield has ceased paying Vann his salary.

## II.     PROCEDURAL BACKGROUND

Vann filed a *Complaint* in this case on March 6, 2006, against Guildfield and several members of the church. On May 18, Vann voluntarily dismissed the action against every defendant except Guildfield. Thus, Guildfield is the only remaining Defendant, and the only remaining claim is for breach of contract. The same day, Guildfield filed a *Motion to Dismiss for Lack of Jurisdiction*. The parties have submitted briefs on this issue, and the Court heard arguments on August 24, 2006, making this issue ripe for decision.

## III.    LEGAL STANDARD

A defendant may present a motion to dismiss for lack of subject matter jurisdiction in two different ways. *U.S. v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First, the defendant may argue that the plaintiff's complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. If the defendant chooses this route, the facts alleged in the complaint are taken as true. *Id*. Alternatively, the defendant may argue "that the jurisdictional allegations of the

---

[2]Both sides note that this provision does not read clearly. Vann argues that inserting the word "or" between the words "church" and "by" in the first sentence would render the sentence intelligible. Guildfield merely points to this sentence as an example of the "quagmire" into which I must delve should I retain jurisdiction.

2

complaint were not true." *Id*. When this is the case, the trial court "may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id*. In the present case, Guildfield has based its 12(b)(1) Motion to Dismiss on the first method. Thus, I will consider the facts alleged in Vann's Complaint to decide if I may properly exercise jurisdiction in this case.

## IV. DISCUSSION

Guildfield claims that because the First Amendment to the United States Constitution and Article I, Section 16 of the Constitution of Virginia prohibit civil courts from reviewing decisions of religious bodies relating to the employment of clergy, I lack subject matter jurisdiction to decide this case. The First Amendment to the United States Constitution states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. The United States Supreme Court has held that the Religion Clauses apply to the states "by incorporation into the Fourteenth Amendment." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 8 n.4 (2004) (*citing Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).

Similarly, Article I, section 16, of the Constitution of Virginia provides that "religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience." VA. CONST. art. I § 16. "The constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed." *Reid v. Gholson*, 229 Va. 179, 187, 327 S.E.2d 107, 111–12 (1985). Therefore, the constitutional protections of religious

3

freedom in the Virginia Constitution are at least as strong, if not stronger, than their federal counterparts.

The United States Supreme Court has frequently deferred to the decisions of ecclesiastical bodies on spiritual matters. In *Watson v. Jones*, the Court held that when "questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest [church authority] to which the matter has been carried, the legal tribunals must accept such decisions as final." 80 U.S. (13.Wall.) 679, 727 (1871). Although *Watson* was not based on constitutional grounds, the Court's later decisions relied on both *Watson* and the First Amendment to reach a similar result. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES, 1218 (2d. ed. 2002). In *Kedroff v. Saint Nicholas Cathedral of the Russian Orthodox Church in North America*, 344 U.S. 94, 113–16 (1952), the Court discussed *Watson* extensively and concluded that matters of church governance should be constitutionally protected from government intrusion. Later, the Court clarified that this protection extended to both legislative and judicial action. *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 448–49 (1969).[3]

In *Serbian Eastern Orthodox Diocese v. Milivojevich*, the Court applied the above principles to facts similar to this case. In *Milivojevich*, the Holy Assembly of Bishops, the highest judicial and ecclesiastical body in the Serbian Orthodox Church, removed an American bishop from his post and ultimately divested him of his episcopal and monastic ranks. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 699, 705–06 (1976). The Supreme Court of

---

[3]For an excellent review of the development of this area of law, see *Denny v. Prince*, 68 Va. Cir. 339 (2005).

Illinois determined that the Holy Assembly arbitrarily removed and defrocked the bishop because the Holy Assembly's actions did not comply with the Church's own constitution and penal code. *Id*. at 708  Therefore, the Illinois court purported to reinstate the bishop. *Id*.

The Court noted that "the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity." *Id*. at 709.  Although the Court recognized that some language in its prior precedents indicated that civil courts could ignore arbitrary decisions from ecclesiastical bodies, the Court emphatically rejected that possibility in *Milivojevich*. *Id*. at 712–713.

> For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense 'arbitrary' must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question.  But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.

*Id*. at 713.  Therefore, the Court reversed and found that the Supreme Court of Illinois had impermissibly reviewed the Holy Assembly's decision. *Id*. at 724–25.

In light of the Court decision in *Milivojevich*, the United States Court of Appeals for the Fourth Circuit has concluded that "[i]t has thus become established that the decisions of religious entities about the appointment and removal of ministers and persons in other positions of similar theological significance are beyond the ken of civil courts." *Bell v. Presbyterian Church*, 126 F.3d 328, 331 (1997).  Numerous other courts have reached the same conclusion.  *See, e.g., Natal v. Christian and Missionary Alliance*, 878 F.2d 1575, 1576–77 (1st Cir. 1989) (finding that district court properly determined it could not constitutionally hear minister's claim for wrongful

5

termination); *Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 942 (6th Cir. 1992) ("We conclude that the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy."); *Young v. N. Ill. Conference of United Methodist Church*, 21 F.3d 184, 187 (7th Cir. 1994) ("the Free Exercise Clause of the First Amendment forbids a review of a church's procedures when it makes employment decisions affecting its clergy"); *Dobrota v. Free Serbian Orthodox Church St. Nicholas*, 191 Ariz. 120, 124, 952 P.2d 1190, 1194 (1998) ("civil courts must abstain from deciding ministerial employment disputes or reviewing decisions of religious judicatory bodies concerning the employment of clergy").

The Supreme Court of Virginia has also examined the issue under the United States and Virginia Constitutions. In *Cha v. Korean Presbyterian Church of Washington*, the Supreme Court of Virginia considered whether the trial court properly determined that it could not hear a pastor's claim that his former church wrongfully terminated his employment. 262 Va. 604, 607–08, 553 S.E.2d 511, 512 (2001). In that case, the Elders Committee, the governing body of the Korean Presbyterian Church, voted to fire the plaintiff, a junior pastor in the church. *Id*. at 608, 610, 553 S.E.2d at 512, 513. When the plaintiff brought suit in circuit court, the court determined that it lacked jurisdiction to hear the case. The Supreme Court of Virginia agreed and concluded that both the Free Exercise Clause "and Article I, § 16 of the Constitution of Virginia do not permit a circuit court to substitute its secular judgment for a church's judgment when the church makes decisions regarding the selection or retention of its pastor." *Id*. at 612, 553 S.E.2d at 515. Therefore, both the United States and Virginia Constitutions prohibit a court

from reviewing a religious organization's employment decisions regarding its clergy.[4]

While the rule of judicial deference to religious bodies' employment choices concerning clerics is indeed venerable, I do not believe that it applies to this case. As a preliminary matter, Guildfield is a congregational church. Thus, it is governed by the will of the majority, to the extent it has not adopted other rules through majority vote. *Reid*, 229 Va. at 189, 327 S.E.2d at 113. In contrast, a hierarchical church is governed by a religious tribunal or other leader. *Id.* at 188–89, 327 S.E.2d at 113. Decisions of both bodies are equally immune from judicial review. *Id.* at 189, 327 S.E.2d at 113.

Certainly, the First Amendment of the United States Constitution, as made applicable to the states through the Fourteenth Amendment, and Article 1, section 16 of the Virginia Constitution prohibit a court from reviewing a religious organization's decision to hire or fire a member of the clergy. Nonetheless, this rule presupposes that the religious organization itself has acted before immunizing the decision from judicial review. Indeed, in each of the cases

---

[4] Vann argues that I should retain jurisdiction in this case because the underlying dispute may be resolved without reference to matters of religious doctrine but through "neutral principles of law." *Reid*, 229 Va. at 189–90, 327 S.E.2d at 113. In *Reid*, the Supreme Court of Virginia did indeed state that "where church property and civil rights disputes can be decided without reference to questions of faith and doctrine, there is no constitutional prohibition against their resolution by the civil courts." *Id.* at 188, 327 S.E.2d at 112. The Virginia court concluded, "The question is simply whether the court can decide the case by reference to neutral principles of law, without reference to issues of faith and doctrine." *Id.* The United States Supreme Court has stated that civil courts may constitutionally decide church property disputes provided that they do not consider doctrinal matters in reaching judgment. *Jones v. Wolf*, 443 U.S. 595, 602 (1979). The Court explicitly recognized that the "neutral principles of law approach" is one constitutionally permissible method for settling such disputes. *Id.* However, the Sixth Circuit has determined that the "neutral principles" doctrine has never been applied to matters of church governance, such as hiring and firing clergy. *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986). Because I will deny the motion on other grounds, I need not consider whether *Reid* extended the "neutral principles" doctrine beyond church property disputes to a question of church governance.

7

discussed above, an official or tribunal of a hierarchical church terminated a minister. Those employment decisions were treated as the decision of the church and were consequently entitled to judicial deference. In the present case, Guildfield has never taken a vote to dismiss Vann as minister, nor has Guildfield delegated that authority to Bennet. Therefore, the Church itself has never acted. Thus, I have subject matter jurisdiction to consider this case because the decision to fire Vann, as alleged in the complaint, was not the decision of a religious entity or church.[5] As a result, that decision is not constitutionally protected from judicial review.

As discussed above, the United States Supreme Court's opinion in *Watson* forms the cornerstone for this area of jurisprudence. In that case, the Court stated,

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed.

*Jones*, 80 U.S. (Wall.) at 728–29. By the same token, the decisions of religious tribunals would be equally meaningless if civil courts had to completely defer to the claims of any person who purported to speak on behalf of a religious organization. Civil courts must be able to conduct a limited inquiry to determine if a religious body has actually spoken. Otherwise, religious

---

[5]*Milivojevich* noted that "civil courts do not inquire whether the relevant [hierarchical] church governing body has power under religious law [to decide such disputes] . . . . Such a determination . . . frequently necessitates the interpretation of ambiguous religious law and usage." *Milivojevich*, 426 U.S. at 708–09 (alterations in original) (internal quotations omitted). Nonetheless, I believe there is an important difference between conducting an inquiry into which part of a religious organization has spoken and asking whether the organization has spoken at all.

8

organizations would be powerless to legally enforce their decisions when a church member disagreed, happened to be in a position to circumvent the decision, and claimed that he or she was the true representative of the church. Such instances might occur when a local congregation of a hierarchical church refused to abide by the decisions of the church's higher tribunals or when a smaller faction of a church joined with the church's deacons and trustees to fire a minister against the majority's will.[6]

Other jurisdictions have also recognized that civil courts may conduct a limited review to determine whether a religious body has actually spoken. *See United Methodist Church, Baltimore Annual Conference v. White*, 571 A.2d 790, 793 (D.C. 1990) (noting that "in extremely limited circumstances, courts have adjudicated conflicts between church and clergy when the issue has been whether church officials had the authority to effect a pastor's discharge, as distinct from whether the church's decision was correct"); *Vincent v. Raglin*, 114 Mich. App. 242, 247, 318 N.W.2d 629, 631 (1982) (*quoting Borgman v. Bultema*, 213 Mich. 683, 703, 182 N.W. 91, 95 (1921)) (noting that civil courts will not review a church's decision to terminate a pastor " '*except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted*' "); *Graham v. Lockhart*, 42 N.C. App. 377, 379, 256 S.E.2d 518, 519–20 (1979) ("We are limited to determining that the majority voted to remove the defendant Lockhart and the record shows that the majority of the congregation so voted.").

## V.     CONCLUSION

---

[6]For similar factual circumstances, see *See Concord Christian Center v. Open Bible Standard Churches*, 34 Cal. Rptr. 3d 412, 415 (Cal. Ct. App. 2005); *Covington v. Bowers*, 442 So.2d 1068, 1069 (Fla. Cir. Ct. 1983).

9

For the reasons stated above, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 19th day of September, 2006.

s/Jackson L. Kiser  
Senior United States District Judge